IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JASMIN URENA, | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. 20-964 |
| LA FITNESS and FITNESS INTERNATIONAL, LLC d/b/a LA FITNESS, | |
| Defendants | |

**MEMORANDUM OPINION**

**Schmehl, J.**   /s/ JLS                                                                 **July 29, 2021**

**I.    INTRODUCTION**

Plaintiff, Jasmin Urena ("Urena") brings this suit for personal injury against Defendant Fitness International, LLC, d/b/a LA Fitness ("Defendant"). Before the Court is the Motion for Summary Judgment of Defendant, Urena's response and Defendant's Reply. For the reasons discussed more fully below, Defendant's Motion for Summary Judgment will be granted.

**II.   LEGAL STANDARD**

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. Proc. 56(c).  "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts but will be denied when there is a genuine issue of material fact." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a

dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." *Pignataro v. Port Auth. of N.Y. and N.J.*, 593 F.3d 265, 268 (3d Cir. 2010) (*citing Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

### III.  FACTUAL BACKGROUND

Urena was a member of the Wyomissing, Pennsylvania LA Fitness. On January 7, 2018, Urena was working out at the Wyomissing LA Fitness. (ECF No. 16, Ex. A, p. 26). After she completed her workout, she entered the sauna at the LA Fitness location. (*Id.*, p. 31). After approximately twenty (20) to twenty-five (25) minutes, Urena claims that she got up from the "second step" of the sauna and as she stepped onto the "first step," the first step broke and she fell. (*Id.*, p. 31). Urena used the sauna each time she went to the LA Fitness club and had no prior issues with the sauna. (Id., pp. 21-22). Urena claims that she injured her right knee in the fall and underwent arthroscopic surgery of her right knee as a result. (Exhibit "A", pp. 60, 74.)

On June 25, 2016, the parties entered into a Membership Agreement. (ECF No. 16, Ex. B). Urena identified the Membership Agreement during her deposition and

confirmed that the first page of said Membership Agreement contained her husband's email address and her cell number. (ECF No. 16, Ex. A, pp. 18-19) Urena also confirmed that she signed the agreement on the first page of the document, placed her initials on the second page of the Agreement, directly next to the section's Exculpatory Clause, as well as on the third page of the Agreement. (*Id.*, pp. 18-20.)

The Membership Agreement's Exculpatory Clause (hereinafter the "Exculpatory Clause") is contained on the initialed second page and states:

> **IMPORTANT: RELEASE AND WAIVER OF LIABILITY AND INDEMNITY**. You hereby acknowledge and agree that use by Member and/or Member's minor children of LA Fitness' facilities, services, equipment or premises, involves risk of injury to persons and property, including those described below, and Member assumes full responsibility for such risks. In consideration of Member and Member's minor children being permitted to enter any facility of LA Fitness (a "Club") for any purpose including, but not limited to, observation, use of facilities, services or equipment, or participation in any way, Member agrees to the following: Member hereby releases and holds LA Fitness, its directors, officers, employees, and agents harmless from all liability to Member, Member's children and Member's personal representatives, assigns, heirs, and next of kin for any loss or damage, and forever gives up any claim or demands therefore, on account of injury to Member's person or property, including injury leading to the death of Member, whether caused by the active or passive negligence of LA Fitness or otherwise, to the fullest extent permitted by law, while Member or Member's minor children are in, upon, or about LA Fitness premises or using any LA Fitness facilities, services or equipment. Member also hereby agrees to indemnify LA Fitness from any loss, liability, damage or cost LA Fitness may incur due to the presence of Member or Member's children in, upon or about the LA Fitness premises or in any way observing or using any facilities or equipment of LA Fitness whether caused by the negligence of Member(s) or otherwise. You represent (a) that Member and Member's minor children are in good physical condition and have no disability, illness, or other condition that could prevent Member(s) from exercising without injury or impairment of health, and (b) that Member has consulted a physician concerning an exercise program that will not risk injury to Member or impairment of Member's health. Such risk of injury includes (but is not limited to): injuries

arising from use by Member or others of exercise equipment and machines; injuries arising from participation by Member or others in supervised or unsupervised activities or programs at a Club; injuries and medical disorders arising from exercising at a Club such as heart attacks, strokes, heat stress, sprains, broken bones, and torn muscles and ligaments, among others; and accidental injuries occurring anywhere in Club dressing rooms, showers and other facilities. Member further expressly agrees that the foregoing release, waiver and indemnity agreement is intended to be as broad and inclusive as is permitted by the law of the State of Pennsylvania and that if any portion thereof is held invalid, it is agreed that the balance shall, notwithstanding, continue in full force and effect. Member has read this release and wavier of liability and indemnity clause, and agrees that no oral representations, statements or inducement apart from this Agreement have been made.

(Emphasis in the original.) (Ex. B.)

## IV.   DISCUSSION

Defendant argues that Urena's Complaint should be dismissed due to Urena's signing of the Membership Agreement which contains a valid and enforceable Exculpatory Clause, barring her claims of negligence. For the reasons set forth below, Defendant's motion for summary judgment will be granted and Urena's Complaint will be dismissed.

The Pennsylvania Supreme Court has held that "an exculpatory clause is valid when three conditions are met. First, the clause must not contravene public policy. Secondly, the contract must be between persons relating entirely to their own private affairs and thirdly, each party must be a free bargaining agent to the agreement so that the contract is not one of adhesion." *Chepkevich v. Hidden Valley Resort, L.P.*, 2 A.3d 1174, 1189 (Pa. 2010) (*citing Princeton Sportswear Corp. v. H. & M. Associates*, 507 A.2d 339 (Pa. 1986) and *Employers Liability Assurance Corp. v. Greenville Business Men's Association*, 224 A.2d 620 (Pa. 1966) ). Further, "even once an exculpatory clause is

4

determined to be valid, it will, nevertheless, still be unenforceable unless the language of the parties is clear that a person is being relieved of liability for his own acts of negligence." *Id.*

In the instant matter, the clause in question does not violate public policy, as a waiver of liability violates public policy only if it involves "a matter of interest to the public or the state . . . [such as] the employer-employee relationship, public service, public utilities, common carriers, and hospitals." *Seaton v. E. Windsor Speedway, Inc.*, 582 A.2d 1380, 1382 (Pa. Super. Ct. 1990). Clearly, a clause between a private party and a fitness facility does not involve a matter of interest to the public or the state. Therefore, the first prong of the test set forth above is met. Similarly, the contract entered into between Urena and Defendant is obviously one dealing only with their private affairs. Accordingly, the second prong is also met.

Lastly, I must decide whether the waiver in question is a contract of adhesion. Courts have consistently held that agreements to participate in "voluntary sporting or recreational activities" are not contracts of adhesion because "[t]he signer is a free agent who can simply walk away without signing the release and participating in the activity, and thus the contract signed under such circumstances is not unconscionable." *Chepkevich v. Hidden Valley Resort, L.P.*, 2 A.3d 1174, 1190-91 (Pa. 2010). "The signer is under no compulsion, economic or otherwise, to participate, much less to sign the exculpatory agreement, because it does not relate to essential services, but merely governs a voluntary recreational activity." *Id.*

In the instant matter, Urena was under no compulsion to exercise at a gym. *See Hinkal v. Pardoe*, 133 A.3d 738, 741-42 (Pa. Super. Ct. 2016) (en banc), *appeal denied*,

5

141 A.3d 481 (Pa. 2016) (citing the "thorough and well-reasoned opinion" of the trial court, which held that the plaintiff's gym membership agreement was not a contract of adhesion because exercising at a gym is a voluntary recreational activity and the plaintiff was under no compulsion to join the gym). Accordingly, the waiver that Urena signed cannot be considered a contract of adhesion and is valid. Even so, the waiver will only be enforceable so long as it is clear that Defendant is being relieved of liability from its own acts of negligence. *See Chepkevich*, 2 A.3d at 1189.

> The Membership Agreement states:
>
> Member hereby releases and holds LA Fitness...harmless from all liability to Member...for any loss or damage and forever gives up any claim or demands therefore, on account of injury to Member's person..., whether caused by the active or passive negligence of LA Fitness or otherwise, to the fullest extent permitted by law.

Mem. Agrmt. 2. The language of this exculpatory clause could not be clearer. Therefore, the waiver in question is enforceable and Defendant has established its immunity from this negligence suit based on the language of the exculpatory clause. This decision is in line with several cases in this District, where Courts have upheld the validity of identical LA Fitness exculpatory clauses. *See Hill v. LA Fitness*, 2018 WL 1757604 (E.D. Pa., Apr. 12, 2018) (Joyner, J.); *Evans v. Fitness & Sports Clubs*, 2016 WL 5404464 (E.D. Pa., Sept. 28, 2016) (Brody, J.); *Artwell v. LA Fitness*, 2011 WL 79821 (E.D. Pa., Jan. 10, 2011) (Fullam, J.).

Urena sets forth two arguments in an attempt to defeat Defendant's motion, neither of which the Court finds persuasive. First, Urena argues that Defendant's Motion for Summary Judgment is untimely, as it should have been filed by July 29, 2020, (thirty days after the close of discovery) and wasn't filed until February 24, 2021. In making this

argument, Urena cites to Federal Rule of Civil Procedure 56(b), which states that Motions for Summary Judgment may be filed until thirty days after the close of discovery unless the court orders otherwise. However, as the Third Circuit has stated, "[Rule 56(b)] is only a default timing provision; Rule 56 grants District Courts discretion to order otherwise." *Cioni v. Globe Specialty Metals*, 618 Fed. Appx. 42 (3d Cir. 2015).

In this matter, I reject Urena's argument as to the timeliness of Defendant's motion for summary judgment, especially in light of the fact that Urena herself took a deposition well after June 29, 2020, the date that she claims was the close of discovery for purposes of calculating the summary judgment deadline.

Next, Urena argues that the Membership Agreement was in English and her primary language is Spanish and is therefore an unenforceable contract of adhesion. ECF No. 17, p. 9. However, "under Pennsylvania law, Defendant alone is responsible for understanding and reading the Contract prior to signing it. The potential language barrier does not raise a genuine dispute of material fact as to whether an agreement is valid and enforceable." *Wells Fargo Bank, N.A. v. Chun Chin Yung*, 317 F.Supp.3d 879, 887 (E.D. Pa. 2018). It is also noteworthy that in a case involving the exact same LA Fitness waiver as the one in question here, a plaintiff unsuccessfully argued that the exculpatory clause was not enforceable because she did not speak English. In that case, the Court stated that "[Plaintiff's] inability to speak English does not bar her from becoming contractually bound." *Kang v. LA Fitness*, 2016 WL 7476354 (D.N.J., Dec. 29, 2016) (Hayden, J.) I similarly find Urena's argument to be unavailing. The exculpatory clause in question is valid and enforceable and serves to bar the instant action. Accordingly, Defendant's motion will be granted.

## V. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is granted and Urena's Complaint is dismissed. An appropriate order follows.